IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ESTATE OF ANTHONY J. GARDNER, by special administrator PETER. A STANFORD, MELISSA ARMAGOST, and SAMANTHA GARDNER,

    Plaintiffs,

v.                                            OPINION and ORDER

LANE KOLTERMANN, CITY OF BAYFIELD POLICE        24-cv-568-jdp
DEPARTMENT, CITY OF BAYFIELD, and LEAGUE
OF WISCOSNIN MUNICIPALITIES MUTUAL
INSURANCE,

    Defendants.

---

Anthony Gardner was killed when he was struck by a car driven by Bayfield police officer Lane Koltermann. Gardner's estate and two of his adult children are suing Koltermann, the city of Bayfield, the Bayfield Police Department, and an insurance company, alleging that defendants violated the Due Process Clause, the Fourth Amendment, and various state laws related to negligence.

Defendants move to dismiss plaintiffs' claims against the police department, the federal claims against the city, and the Fourth Amendment claim against Koltermann. Dkt. 4.[1] The court will grant the motion.

The police department is not a proper party because it is not suable under Wisconsin law. Plaintiffs' Fourth Amendment claim fails because the Fourth Amendment applies only to intentional conduct, and the only reasonable inference supported by plaintiffs' allegations is

---

[1] Plaintiffs move for leave to file a surreply brief in opposition to the motion to dismiss, and they attach a proposed brief. Dkt. 21. The court will grant that motion and consider the brief.

that Koltermann's conduct was accidental. Plaintiffs' constitutional claims against the city fail because those claims require plaintiffs to show that the city knew that its policies or practices were likely to lead to a constitutional injury similar to what happened in this case. The complaint does not contain plausible allegations supporting such a claim.

The court will dismiss the police department, the Fourth Amendment claim against Koltermann, and the constitutional claims against the city. But the court will grant plaintiffs' request to file an amended complaint to attempt to address the problems discussed in this opinion.

## ALLEGATIONS OF FACT

On the evening of August 2, 2023, in Bayfield, Wisconsin, Anthony Gardner was walking north along State Highway 13, approximately one foot to the right of the fog line. Koltermann was driving north on Highway 13 in a squad car owned by the Bayfield Police Department. (The complaint does not say whether Koltermann was on duty at the time, but both sides assume that Koltermann was acting under color of law and within the scope of his employment.) Koltermann's speed was 55 miles per hour; the speed limit was 35 miles per hour.

Koltermann had not yet received any "formal training" from the police department.

Between 10:16 and 10:17:36 p.m., Koltermann sent and received text messages on his cellphone using the SnapChat app. At 10:17:40 p.m., Koltermann drove three and a half feet over the fog line and struck Gardner with the right side of his car.

Less than two hours later, Gardner died from his injuries.

2

ANALYSIS

Defendants assert three arguments in their motion to dismiss: (1) the police department is not a suable entity; (2) plaintiffs have not stated a claim under the Fourth Amendment against Koltermann; and (3) defendants have not stated any claim under the Constitution against the city. Defendants do not seek dismissal of plaintiffs' due process claim or any of their state-law claims.

**A. Police department**

State law governs whether a state governmental entity may be sued. Fed. R. Civ. P. 17(b)(3). As both this court and the Court of Appeals for the Seventh Circuit have recognized, Wisconsin law allows municipal entities like cities and counties to be sued, *see* Wis. Stat. § 62.25, but police departments and sheriff departments are simply units of cities and counties, so they cannot be sued separately. *See Whiting v. Marathon County Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir.2004); *McCallum v. Court of Appeals*, No. 16-cv-414-wmc, 2019 WL 4333315 *1 (W.D. Wis. Sept. 12, 2019).

Plaintiffs acknowledge that police departments are not suable under Wisconsin law, but they contend that dismissal would be "premature" because "defendants have not produced their insurance agreements." Dkt. 19, at 6. Plaintiffs cite statutes that require the municipality to indemnify its employees under certain circumstances and that allow plaintiffs to sue a defendant's insurer directly. *See* Wis. Stat. § 895.46(1)(a) and Wis. Stat. § 803.04(2)(a).

The statutes plaintiffs cite are not helpful because they have nothing to do with the question whether police departments are suable entities. Plaintiffs' argument seems to be that the court must keep the police department in the case because it is possible that the insurance policies name the police department as the insured rather than the city. But regardless of which

3

entity is named as the insured, an insurance policy cannot change the scope of state law, which makes it clear that claims against the police department must be brought against the city. Plaintiffs have already named the city, so the claim against the police department is redundant. The court will dismiss the department.

**B.  Fourth Amendment claim against Koltermann**

Plaintiffs assert a Fourth Amendment claim against Koltermann for using excessive force against Gardner by hitting Gardner with Koltermann's squad car. An excessive force claim requires a seizure, and a seizure occurs only when there is "an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) ("[T]he detention or taking itself must be willful."). Defendants contend that plaintiffs failed to plead that Koltermann hit Gardner intentionally, so plaintiffs have not stated a claim under the Fourth Amendment.

Plaintiffs concede that the Fourth Amendment does not apply to car accidents, so there is no Fourth Amendment violation unless Koltermann intended to hit Gardner. But plaintiffs contend that they pleaded intent in paragraph 56 of their complaint: "Kolterman[n] acted with willful misconduct, reckless, deliberate and intentional disregard for the lives of others, including Gardner's." Dkt. 1, ¶ 56. But that is just a legal conclusion couched as an allegation, and the court does not accept legal conclusions as true, including conclusions about a party's intent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 1000-01 (7th Cir. 2014). In any event, plaintiffs do not allege that Koltermann intentionally or willfully *hit* Gardner with his car. Rather, plaintiffs allege just the opposite. Specifically, they say that Kolterman was texting on his phone immediately before

4

he hit Gardner, supporting the inference that Koltermann was distracted and hit Gardner accidentally.

Plaintiffs say that their allegations leave open the possibility that Koltermann acted intentionally. Specifically, they point to their allegation that Koltermann drove more than three feet over the line before hitting Gardner, which they say supports an inference that Koltermann saw Gardner and swerved intentionally to hit him. But to satisfy federal pleading requirements, plaintiffs must do more than allege facts that are "consistent with" liability; it must be *plausible* to infer liability. *Iqbal*, 556 U.S. at 680–83. That rule applies with added force when there is an "obvious alternative explanation" for the defendant's conduct. *Id.* In this case, the obvious alternative explanation is that Koltermann swerved because he was distracted by texting on his phone. Plaintiffs identify no reason why Koltermann would have wanted to harm Gardner. Plaintiffs "have not nudged their claim[] across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). So the court will grant defendants' motion to dismiss as it applies to plaintiffs' Fourth Amendment claim.

C. **Constitutional claims against the city**

Plaintiffs assert claims under the Fourth and Fourteenth Amendments against the city. A constitutional claim for municipal liability requires the plaintiff to prove four things: (1) a constitutional deprivation; (2) an action or inaction by the municipal defendant or its employees that can be fairly described as the municipality's policy; (3) notice to the defendant that its policy would lead to constitutional violations; and (4) a direct causal connection between the defendant's policy and the constitutional injury. *See Estate of Wallmow v. Oneida Cnty.*, 99 F.4th 385, 393–94 (7th Cir. 2024); *Thomas v. Neenah Joint School District*, 74 F.4th 521, 524 (7th Cir. 2023); *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022);

5

*First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021).

For the purpose of defendants' motion, the court will assume that Gardner suffered a constitutional deprivation. As for action or inaction of the district that can be fairly described as district policy, plaintiffs do not point to an express city policy that caused the alleged constitutional deprivation. Instead, plaintiffs say that the city had a policy of inaction by: (1) failing to train officers "against operating squad cars with willful, reckless, and deliberate misconduct," Dkt. 19, at 9; and (2) failing to give Koltermann any "formal training" before allowing him to drive a squad car.

For the reasons below, the court concludes that the alleged failures to train do not state a claim for municipal liability. As for the failure to train how to properly drive a squad car, plaintiffs have not fairly alleged that the city had notice that its officers needed training on basic driver safety. As for the failure to provide Koltermann with any formal training, plaintiffs have not identified a causal connection between the lack of training and Gardner's death.

1. **Failure to train on driving a squad car**

A failure to act, including a failure to train, can qualify as a policy for the purpose of municipal liability because a "policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the [municipality] itself to violate the Constitution." *Fields v. City of Chicago*, 981 F.3d 534, 562 (7th Cir. 2020) (internal quotation marks omitted). But the Supreme Court has placed strict limits on municipal liability claims based on a failure to train, reasoning that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). This is because a failure to train is "a

6

good deal further removed" from a subsequent constitutional violation than a violation that is the result of a direct implementation of a policy. *Id.* (*quoting Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion)). There is always something that a municipality could have done differently to prevent a constitutional violation, so a high standard of fault and causation is needed to prevent subjecting municipalities to general vicarious liability. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391–92 (1989).

The Supreme Court has used the phrase "deliberate indifference" to refer to the standard for imposing liability on a municipality for failure to train. *Id.* This requires the plaintiff to show that the defendant knew either that constitutional violations were likely to occur because of the failure to train or that such a risk was obvious. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 379–81 (7th Cir. 2020). A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to provide such notice. *Board of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997); *see also Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 240 (7th Cir. 2021) ("[W]e have repeatedly rejected . . . claims [against municipal defendants] that rest on the plaintiff's individualized experience without evidence of other constitutional violations."). But past violations are not required to provide notice in the rare circumstance that a constitutional violation is a "patently obvious" consequence of a failure to train. *Connick*, 563 U.S. at 63.

In this case, plaintiffs do not allege that Bayfield officers had a history of fatal car accidents or even of unsafe driving. Instead, plaintiffs contend that it was obvious even without previous constitutional violations that officers would harm people with their squad cars if they did not receive training on proper driving.

7

Plaintiffs' argument is foreclosed by *Connick*, 563 U.S. 51, and *Jones v. City of Chicago*, 787 F.2d 200 (7th Cir. 1986). In *Connick*, the Court held that constitutional violations are not an obvious consequence of failing to train prosecutors about their obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), because prosecutors receive training from other sources (law school, continuing legal education, and co-counsel), and they have other incentives for staying informed, including ethical rules. 563 U.S. at 66–68. In *Jones*, the court held that the city was not liable for failing to train doctors on offering a chaperone to patients during exams because "a physician knows (and the City properly may expect) that his conduct must not exceed the bounds of his oath and ethical obligations". 787 F.2d at 206–07. This court reached a similar conclusion in *McGlenn v. Madison Metropolitan School District*, holding that it was not obvious that a school district needed to train its staff not to secretly record students in hotel bathrooms because "[a]ny reasonable adult—public employee or otherwise—would know without training that it is an extreme invasion of privacy to secretly record a child in the bathroom." 738 F. Supp. 3d 1071, 1108 (W.D. Wis. 2024).

These cases stand for the common-sense principle that municipalities are not required to provide training on basic issues that employees should already know, at least until there is a pattern of conduct showing that training is needed. Plaintiffs' claim fails under that basic principle. This is not a situation in which an officer killed someone during a high-speed chase or other type of police work that requires specialized training. *Cf. Glisson v. Indiana Department of Corrections,* 849 F.3d 372, 382 (7th Cir. 2017) (holding that municipal corporation could be held liable for failing to train staff on coordinating cancer treatment); *Woodward v. Correctional Medical Services, Inc.,* 368 F.3d 917, 924 (7th Cir. 2004) (holding that municipal corporation could be held liable for failure to train staff on suicide prevention). Rather, the type of training

8

that plaintiffs say was needed—on speeding and texting while driving—involve basic rules of the road that every person with a driver's license should already know. In fact, both types of conduct are prohibited under Wisconsin law, as plaintiffs point out in their complaint.

Plaintiffs rely on *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021), but that case bears only superficial similarities to this one. Like this case, *Flores* involved a police officer who killed someone while speeding in his squad car. But *Flores* is readily distinguishable because the plaintiffs in that case alleged that the city knew that its officers "had a history of reckless speeding." *Id.* at 733. This included three instances in which the defendant himself had driven between 60 to 114 miles per hour when the speed limit was between 30 and 50 miles per hour. *Id.* The court held that municipal liability can be established when the city "has actual knowledge of a pattern of criminally reckless conduct" and then takes "no steps to prevent this behavior—no training, no discipline, no reprimands." *Id.* at 733–34.  So the problem in *Flores* was not simply a failure to train an officer to drive the speed limit; it was failing to curb a problem that it knew was already occurring. Plaintiffs allege nothing like that in this case, so *Flores* is not instructive.

Plaintiffs' reliance on *J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020), is also misplaced. In *J.K.J.*, the court held that the county could be held liable under the Constitution for the sexual assault of a prisoner because the county had fostered a "culture that condoned the sexual objectification of the women in its custody" and then failed to create any procedures for detecting sexual abuse or a confidential means for complaining about it. *Id.* at 384. Plaintiffs do not allege that a "culture" of reckless driving permeated the police department or that the city otherwise encouraged or tolerated such driving. So *J.K.J.* does not support plaintiffs' claim either.

Plaintiffs' complaint does not include plausible allegations that the city was on notice that it needed to provide training to its officers on basic driver safety. So the court will dismiss this claim.

### 2. Failure to provide any formal training

Plaintiffs include the following allegation in their complaint: "On August 2, 2023, Koltermann was still learning to become a law enforcement officer. Koltermann's formal training with the [Bayfield Police Department] and the City had not been initiated or completed." Dkt. 1, ¶ 29. Plaintiffs do not explain what they mean by "formal" training, and they do not otherwise provide any context for that allegation.

If the city did not provide Koltermann with any training before placing him on the job, that could provide notice that constitutional violations are likely to follow. For example, the Supreme Court has observed that it is obvious that police training is needed to prevent unconstitutionally excessive force. *City of Canton*, 489 U.S. at 390 n.10. But the question is not simply whether the municipality failed to provide training that it should have. The plaintiff must also show that the failure to train *caused* the plaintiff's injury. *See id.* at 391. In this case, plaintiffs do not identify any additional training that could have prevented Gardner's death, other than training on driving safety, and the court has already concluded that such training was not constitutionally required under the circumstances alleged in the complaint. So the court will dismiss plaintiffs' constitutional claims against the city.

### CONCLUSION

The court will dismiss the police department, the Fourth Amendment and Fourteenth Amendment claims against the city, and Fourth Amendment claim against Koltermann.

Plaintiffs ask for leave to replead in the event that the court dismisses any claims. Plaintiffs do not identify any additional information they could include in their complaint to support a claim under the Fourth Amendment or for municipal liability. But the general rule is that plaintiffs should receive one opportunity to replead, *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022), and the court cannot say that it would be impossible for plaintiffs to successfully replead the Fourth Amendment or municipal liability claims, so the court will grant plaintiffs' request.

ORDER

IT IS ORDERED that:

1. The motion for leave to file a surreply brief filed by plaintiffs Estate of Anthony J, Gardner, Melissa Armagost, and Samantha Gardner, Dkt. 21, is GRANTED.

2. The motion to dismiss filed by defendants Lane Koltermann, City of Bayfield Police Department, City of Bayfield, and League of Wisconsin Municipalities Mutual Insurance, Dkt. 4, is GRANTED and the following claims are DISMISSED for failure to state a claim upon which relief may be granted:

   a. all claims against defendant City of Bayfield Police Department;

   b. the Fourth Amendment and Fourteenth Amendment claims against the City of Bayfield; and

   c. the Fourth Amendment claim against Lane Koltermann.

3. Plaintiffs may have until May 14, 2025, to file an amended complaint that addresses the problems discussed in this opinion.

Entered April 24, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge