IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ESTATE OF ANTHONY
J. GARDNER, *et al*,

                      Plaintiffs,                    OPINION and ORDER

   v.

                                                  24-cv-568-jdp

LANE KOLTERMANN, *et al*,

                      Defendants.

---

      Plaintiffs allege that defendant Lane Koltermann, a police officer with the City of Bayfield Police Department, struck Anthony Gardner with his squad car and that Gardner died as a result of the collision. Plaintiffs, including the Estate of Gardner, also allege that Koltermann sent and received Snapchat messages in the moments before he struck Gardner. To support their theories of liability and damages, plaintiffs seek information associated with Koltermann's cell phone use, specifically, the dates and times of any incoming/outgoing phone calls, text messages, or social media notifications. Plaintiffs ask for months of data, arguing that this could show a pattern of cell phone use while on duty, which in turn could speak to Koltermann's state of mind during the time of the collision. Defendants offered to produce information generated the day of and one day after the incident and otherwise objected to the requests as overbroad. Plaintiffs are unsatisfied with that offer, contending they are entitled to information generated May 2 through August 2, 2023, and they have moved to compel on that basis. For the reasons given in this order, plaintiffs' motion is GRANTED.

BACKGROUND[1]

The fatal collision giving rise to this lawsuit was the subject of law enforcement review and investigation. Unless otherwise cited, the following facts are summarized from reports from the Bayfield Police Department and the Ashland County Sheriff's Department:

On August 2, 2023, at approximately 10:17:40 p.m., Koltermann struck Gardner with his Bayfield Police Department squad car. Dkt. 1 at 1–2; Dkt. 30-3 at 22. Gardner died at the scene shortly after. Dkt. 30-3 at 15.

Around an hour after the incident, Bayfield Police Department Chief Novak told Koltermann it would be wise to "shut down" his social media accounts to limit his potential exposure to communications in the wake of Gardner's death. Dkt. 30-2 at 8. Novak reported Koltermann heeded his advice and deleted the social media applications on his personal cell phone within hours of the incident.[2] *Id.* at 9. Later, Koltermann turned his personal cell phone over to the Ashland County Sheriff's Department, and Detective Sergeant Pierce reviewed it for recent activity. Dkt. 30-3 at 29–31. The review reported that Koltermann sent three Snapchats between 10:16:00 p.m. and 10:16:16 p.m. and that he received a Snapchat at 10:17:36 p.m. *Id.* Koltermann stated that he sent some Snapchats while parked before the incident but denied using his phone in any way while driving or at the time of the collision.

---

[1] The facts in this section are derived from police reports included in the parties' affidavits, Dkts. 30 & 32, the uncontested allegations in the amended complaint, Dkt. 23, and Judge Peterson's order granting defendants' motion to dismiss, Dkt. 22. The court recounts these facts only for the purpose of resolving this discovery dispute and not for any other purpose in the case.

[2] The court understands that Koltermann deleted only the social media applications from his phone as opposed to deleting his social media profiles or data from the social media accounts.

Dkt. 30-3 at 12. The review also indicated Koltermann did not access either Facebook or Instagram at or near the time of the collision. *Id.* at 32–34.

Gardner's estate and its administrators sued Koltermann in his personal capacity, alleging, among other things, that he violated Gardner's Due Process rights by recklessly disregarding Gardner's safety and life. Dkt. 1 at 10–11. Plaintiffs also sued the City of Bayfield on a theory of inaction, alleging it failed to train officers against willful, reckless, and deliberate misconduct and for failing to give Koltermann any "formal training" before allowing him to drive a squad car. Dkt. 19 at 5, 11.

Defendants filed a motion to dismiss. Relevant here, the court dismissed plaintiffs' constitutional claims against the city, reasoning that the city had no duty to train its officers on basic driver safety and that plaintiff failed to articulate any kind of preventative "formal training" that the city was duty bound but failed to provide. Dkt. 22 at 6–10. The court dismissed the claims without prejudice, citing the general rule that plaintiffs should receive one opportunity to replead. *Id.* at 10–11. Plaintiffs were left to proceed on their Due Process and common law negligence claims against Koltermann, as well as their punitive damages claim.

In March 2025, plaintiffs subpoenaed Facebook, Snapchat, and presumably AT&T,[3] demanding messaging and notification data from Koltermann's personal accounts. Facebook and Snapchat resisted the subpoenas and ultimately did not respond to them. Dkt. 30-10. Whether AT&T responded to the subpoena is not clear from the record. Plaintiffs did not

---

[3] The only documents docketed are Facebook and Snapchat's replies to the subpoenas, not the subpoenas themselves. Dkt. 30-10. Regarding AT&T, neither a reply nor a subpoena is docketed, but plaintiffs stated that Koltermann's phone records were "under subpoena" in the release form they sent to defendant to sign, Dkt. 20-4.

move the court to compel the companies' compliance with the subpoenas. Instead, plaintiffs pivoted and sought the records from Koltermann himself.

Plaintiffs requested Koltermann sign an authorization form permitting AT&T to release to plaintiffs the call and text records from Koltermann's personal cell phone generated between April 1, 2023, and August 3, 2023. Dkt. 30-4. During a subsequent meet and confer, plaintiffs offered to shorten their AT&T request to the period of July 3, 2023, through August 3, 2023. Dkt. 30-5. At a second meet and confer, Koltermann offered to sign the release if the dates were changed to August 2 to August 3, 2023, *i.e.*, the forty-eight hours surrounding the crash. Dkt. 30-6 at 1.

Similarly, in April 2025, plaintiffs served a second set of discovery requests that sought Koltermann's Facebook, Instagram, and Snapchat cloud-based account data generated between July 3, 2023, through August 3, 2023. Dkt. 30-7. Plaintiffs later amended the request to May 2, 2023, through August 2, 2023, after their forensic expert concluded three months of data would be necessary to establish whether Koltermann's use of his personal phone while on duty amounted to a "policy and practice." Dkt. 30-8 at 3; *see also* Dkt. 30 at 3–4.

During a subsequent meet and confer, defendants reiterated their unwillingness to turn over any social media or phone records generated outside of the August 2 to 3, 2023, period. Dkt. 30-8. On May 1, 2025, defendants served their responses to plaintiffs' discovery requests and objected to the requests for the social media data entirely, arguing they were overbroad and disproportional to needs of the case. Dkt. 30-9.

Plaintiffs now move to compel the production of Koltermann's personal Snapchat, Facebook, and Instagram data, as well as Koltermann's signed AT&T release authorization

form for call and text records, generated May 2, 2023, through August 2, 2023. Dkt. 25. The issue has been fully briefed and is ripe for a decision.[4]

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery otherwise allowed if it is unreasonably cumulative or duplicative, or if the burden or expense of the proposed discovery outweighs its likely benefit in the context of the case. Fed. R. Civ. P. 26(b)(2)(C).

## ANALYSIS

Plaintiffs argue that three months of phone and social media records are relevant to prove (1) the city's policy of permitting law enforcement officers to violate basic safety

---

[4] Defendants filed their brief in response two weeks after the deadline, *see* Dkt. 25 & Dkt. 31, and plaintiffs moved to strike the brief as untimely, Dkt. 33. Defendants concede they missed the deadline but urge the court to consider the brief anyway. In support, defendants report that they mistakenly believed they had twenty-one days to respond and contend that this mistake was not malicious nor prejudicial. Dkt. 34 at 2. The court finds that defendants' conduct amounts to excusable neglect, Fed. R. Civ. P. 6(b)(1)(B), and that considering the merits of the response brief poses no unfair prejudice to plaintiffs. For these reasons, the court DENIES plaintiffs' motion to strike defendants' response brief, Dkt. 33, and has considered the response in deciding the motion to compel.

standards while driving on duty, which underpins their dismissed *Monell* claim, and (2) that Koltermann specifically had a pattern of using his phone while driving, which supports plaintiffs' negligence and Due Process claims against Koltermann, as well as plaintiffs' punitive damages claim. Dkt. 27 at 8. The first argument is foreclosed, but the second has more traction.

Whether the phone records sought are relevant to the *Monell* claim is of no matter because Federal Rule of Civil Procedure 26(b)(1) cabins discovery to any nonprivileged matter relevant to a party's claims or defenses. Plaintiffs' *Monell* claim was dismissed before this motion was filed. Dkt. 22. They were given leave to replead it in their amended complaint, also filed before this motion, but they did not do so. *See* Dkt. 23. Because the *Monell* claim is no longer in the case, information relevant solely to that claim no longer falls within the ambit of Rule 26(b)(1) and, thus, is not discoverable.[5]

The more salient question is whether the phone records sought are relevant to plaintiffs' active negligence and Due Process claims and theory of damages. The answer to this question turns on the timing of the records. Records showing phone use at the time of the collision are inarguably relevant because they could show that Koltermann was looking his phone rather than the road when he struck Gardner, making a case of negligence or recklessness more likely. But records showing phone use a month before cannot speak to his actions at the time of the

---

[5] Plaintiffs cite *Sater v. Republic Servs. of Ind. Transp. LLC*, No. 3:23-CV-403-CCB-SJF, 2024 WL 4344883, at *2–3 (N.D. Ind. Sept. 30, 2024) to contend that "even when claims or theories of liability have been dismissed, courts will grant motions to compel discovery served *before* the dismissal, and are related to those claims," Dkt. 27 at 22 (emphasis in original). The court does not read *Sater* to support that proposition. Rather, the court sees *Sater* as an example where a court authorized discovery relevant to punitive damages, an active damages theory, even though the discovery may have also borne some relevance to inactive claims. Ultimately, that is similar to what the court is doing here.

collision. Plaintiffs rely on a different theory of relevance for these records. They argue that the records may show that Koltermann had a habit of looking at his phone while on duty, which could "go to Koltermann's state of mind when he used social media and his personal cellphone while driving" and "the depth of Koltermann's state of mind and knowledge of the substantial risk of death he created to others while . . . sending and receiving Snapchat messages[.]" Dkt. 27 at 21–22.

Essentially, plaintiffs want the phone records to show other acts, which are generally not admissible. *See* Fed. R. Evid. 404(b). Plaintiffs will have to show the records fit into an exception, like state of mind or lack of mistake. But the court is concerned with discoverability at this juncture, not admissibility. And while plaintiffs' theory is somewhat underdeveloped, the court will not shut it down prematurely. If the records show Koltermann used his phone every minute on the minute while on duty, over the course of months, plaintiffs could point to that data to theorize that phone use on the night of the collision was not a one-off mistake. Conversely, records showing sporadic phone use could cut the other way. This is enough to satisfy the relevance inquiry for purposes of discovery. *See, e.g., Hongsermeier v. USA Truck, Inc.*, No. 16-CV-2321-JWL-TJJ, 2017 WL 373380, at *2 (D. Kan. Jan. 26, 2017). It may not be enough to satisfy higher standards later in the case, including because evidence of sending or receiving a message while at work does not equate to sending or receiving a message while driving. Plaintiffs likely will need to do more to bolster this theory to convince the court of the data's ultimate admissibility, but that is a concern for another day.

Factoring into the court's analysis is the relatively light burden associated with obtaining these records. From the parties' briefing, it appears Koltermann need only sign waivers and the telecommunications providers will produce the records as a matter of routine.

7

Or, if that fails, Koltermann can produce reports from the phone extraction done as part of law enforcement's investigation. Because there is little burden here, the scope of the request is not disproportionate. Also, concerns for Koltermann's privacy interests are mitigated by the limited nature of the data sought—plaintiffs seek only dates and times associated with incoming/ongoing calls and messages; they do not seek content of those calls and messages.

Accordingly, the court ORDERS defendants to provide to plaintiffs Koltermann's AT&T phone records showing the date and time of any incoming and outgoing calls or text messages on his personal cell phone from May 2, 2023, through August 2, 2023. Additionally, defendants must provide plaintiffs a record reflecting the date and time of all messages and notifications sent or received on Koltermann's Snapchat, Facebook, and Instagram accounts from May 2, 2023, through August 2, 2023. In keeping with plaintiffs' allowance, Dkt. 27 at 27, defendants may omit or redact all substantive information contained in the content of the messages or notifications and provide simply the dates and time stamps.

## ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to compel, Dkt. 25, is GRANTED.
2. Plaintiffs' motion to strike defendants' brief in response, Dkt. 33, is DENIED.
3. The parties bear their own costs on this motion.

Entered August 27, 2025.

BY THE COURT:

/s/
_____
ANITA MARIE BOOR
Magistrate Judge

8